**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**LUIS VIRGILIO and NORMA VIRGILIO,**

        **Plaintiffs,**

**-vs-**                                                                           Case No. 6:08-cv-815-Orl-31GJK

**THE RYLAND GROUP, INC., RYLAND**
**MORTGAGE COMPANY,**
**CORNERSTONE TITLE COMPANY** *d/b/a*
**Ryland Title Company, TERRABROOK**
**VISTA LAKES L.P. , TERRABROOK**
**VISTA LAKES GP, L.L.C. , NEWLAND**
**COMMUNITIES, LLC, and WESTERRA**
**MANAGEMENT, L.L.C.,**

        **Defendants.**

_____

## ORDER

This matter came before the Court without oral argument upon consideration of the Motion for Summary Judgment (Doc. 121) filed by Defendants Terrabrook Vista Lakes, LP, Terrabrook Vista Lakes GP, LLC ("Terrabrook"), Newland Communities, LLC ("Newland") and Westerra Management, LLC ("Westerra") (collectively, "Defendants"). Plaintiffs did not file a response. Instead, they filed a motion for relief pursuant to FED. R. CIV. P. 56(f) (Doc. 125), which the Court construed as Plaintiffs' response (the "Response") (*see* Order at Doc. 127). Defendants filed a reply (Doc. 128).

**I.**

The procedural posture and background of this case are well-known to the Court and parties (*see generally* Docs. 70 and 93). In short, Plaintiffs have alleged that Defendants created and marketed the residential development in which Plaintiffs purchased their home without disclosing that a former bombing range was once located on or near their home (*see*, *e.g.*, Doc. 74, ¶¶ 1, 2, 52 and 53). Plaintiffs do not allege, however, that Defendants sold them their home;[1] and the Court has found, as a matter of law, that Plaintiffs failed to assert a claim for relief pursuant to *Johnson v. Davis*, 480 So. 2d 625 (Fla. 1985) [hereinafter "*Johnson*"] (*see* Docs. 70 at 7-9 and 93 at 7-11).[2] Notwithstanding the dismissal of their *Johnson* claims, Plaintiffs assert that Defendants remain liable for their non-disclosure under a negligence theory.

---

[1] As discussed further, *infra*, Plaintiffs purchased, financed and obtained title insurance for their home from The Ryland Group, Inc., Ryland Mortgage Company and Cornerstone Title Company d/b/a Ryland Title Company (collectively, "Ryland" or the "Ryland Defendants") (Doc. 74, ¶ 54 and Doc. 74-3).

[2] The Court noted, however, that Florida's courts have yet to address "whether a developer, which subdivides and otherwise prepares residential lots before selling them to a builder as home sites and then later markets the entire subdivision for a fee paid by the builder/seller, may be subject to liability under *Johnson* notwithstanding the fact that the builder – not the developer – ultimately built and sold the home to the buyer" Doc. 93 at 10). Sitting in diversity, this Court must follow state substantive law as it has been announced by the state's highest court and is generally bound by the decisions of the state's intermediate appellate courts. 28 U.S.C. § 1652; *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Pendergast v. Sprint Nextel Corp.*, - - - F.3d - - -, Case No. 09-10612, 2010 WL 6745, at *12 (11th Cir. Jan. 4, 2010); *Bailey v. S. Pacific Transp. Co.*, 613 F.2d 1385, 1388 (5th Cir. 1980). Faced with an unresolved issue of Florida law, the Court should consider all available "data" in determining how the Florida Supreme Court might rule on an issue. *Pendergast*, 2010 WL 6745 at *12. While the Court is convinced that its prior Orders are consistent with this framework and that, based on existing precedent, the Florida Supreme Court would not extend *Johnson* to Defendants, Plaintiffs have suggested that this issue warrants interlocutory review (and, presumably, certification to the Florida Supreme Court) (*see* Doc. 111).

Count IX, in particular, alleges that Defendants actively marketed their residential development and the fact that Ryland was building and selling homes in the subdivision in which Plaintiffs purchased their home (Doc. 74, ¶155). Despite this marketing, Defendants never publicly disclosed the existence of the former bombing range to Plaintiffs (Doc. 74, ¶ 155). Because Defendants had an affirmative duty to make such a disclosure but failed to do so, Plaintiffs assert that Defendants were negligent (Doc. 74, ¶ 155-56).

Defendants have now moved for summary judgment on Count IX, contending that they had no duty to disclose the existence of the former bombing range to Plaintiffs (Doc. 121 at 9).

Accordingly, the issue before the Court is whether a developer or entities that promote a development have a duty, as a matter of Florida negligence law, to publicly disclose materials facts that may negatively affect the value of homes in a residential development, notwithstanding the fact that the developer and promotional entities did not build, own or sell any of the homes in the development or play any role in the sale of any particular home.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) and, alternatively, 28 U.S.C. § 1332(d)(2) (Doc. 70 at 6). The parties agree that Florida substantive law is controlling.

**II.**

The material facts are not in dispute.³ In 1999, Terrabrook purchased nearly 1,000 acres of undeveloped land in southeastern Orlando. A significant portion of that land was located on or near a World War II-era bombing range known as the Pinecastle Bombing Range (the "PBR") (Doc. 74, ¶¶ 1-3). According to Plaintiffs, Terrabrook always knew that the PBR contained "unexploded firebombs, rockets, ammunition, ordinance, and toxic chemicals" (Doc. 74, ¶ 3). Despite that knowledge, Terrabrook enlisted the help of Westerra (and later Newland) to create, manage and develop Vista Lakes – a residential development comprised of more than 1,000 homes and numerous subdivisions, including the Newport subdivision in which Plaintiffs purchased their home (Doc. 74, ¶¶ 2-3).

As the developer, Terrabrook was responsible for subdividing the land, paving the streets, roughly grading and compacting each home site, and installing the water, sewer and drainage systems throughout Vista Lakes (Doc. 111-3). It then sold the prepared home sites to builders such as Ryland pursuant to a residential lot purchase and sale agreement ("Lot Purchase Agreement").

The Lot Purchase Agreement, *inter alia*:

---

³Plaintiffs argued that they need additional discovery regarding Defendants' respective roles in the creation and promotion of Vista Lakes in order to respond to Defendants' Motion for Summary Judgment (Doc. 125). As noted, *infra*, however, a tortfeasor's duty is a question of law, which, in the context of this case, can be carefully addressed on the current record. With few exceptions, the Court has drawn the undisputed facts solely from the Third Amended Complaint (Doc. 74), the "newly discovered evidence" identified in Plaintiffs' Motion for Reconsideration (Doc. 111), Plaintiffs' latest Motion for Class Certification (Doc. 118), and the deposition of Plaintiff Luis Virgilio (Docs. 105-12 through 105-16).

- Obligated Terrabrook to convey the real estate comprising the home sites to Ryland by special warranty deed;

- Obligated Ryland to timely build single-family homes on each lot that it purchased and to sell those homes to end-purchasers such as Plaintiffs;

- Obligated Ryland to build, decorate and staff at least two model homes in Newport and to keep the model homes open until all of Ryland's lots were sold to end-purchasers;

- Entitled Terrabrook to repurchase the lots sold to Ryland in the event that Ryland failed to timely begin or complete construction, filed for bankruptcy, or sold undeveloped lots without the written consent of Terrabrook;

- Required Ryland, as a condition precedent to entering into the Lot Purchase Agreement, to secure Terrabrook's approval of its color scheme and material specifications for the homes that it would build;

- Entitled Terrabrook to 1.5% of the gross sales price for each home that Ryland sold in the Newport subdivision;[4] and

- Required Ryland to state in each of its sales contacts with end-purchasers that Ryland was not affiliated with Terrabrook and that end-purchasers were relying upon their "OWN INVESTIGATION AND JUDGMENT OF THE RYLAND GROUP, INC.['S] CONSTRUCTION AND FINANCIAL CAPABILITIES AND THAT TERRABROOK VISTA LAKES, L.P. AND ITS AFFILIATES DO NOT WARRANT OR GUARANTEE SUCH CAPABILITIES."

(*see generally* Doc. 111-3).

While Terrabrook no longer owned the home sites that it sold to Ryland or had any ownership interest in the homes that Ryland eventually built and sold to end-purchasers such as Plaintiffs, Terrabrook and Defendants actively marketed the development to the general public

---

[4]In total, Terrabrook received approximately $500,000 from Ryland as a result of Ryland's home sales in the Newport subdivision (Doc. 111 at 9).

(Doc. 111 at 6). In particular, Defendants operated at least two web sites[5] and advertised through newspapers, radio and billboards. Defendants also operated, at least in part, the "Vista Lakes Welcome Center," where prospective residents could review the site plan for the entire development, learn which builders were building in particular subdivisions of Vista Lakes, and where the builders' model homes were located (Doc. 111 at 7).[6]

Notwithstanding Defendants' marketing efforts, Mr. Virgilio testified that, although he may have seen a few billboards for Vista Lakes and was exposed to some radio advertisements, he had never even heard of Terrabrook, Westerra or Newland before he purchased his home from Ryland (Docs. 105-13 at 49-50 and 105-14 at 15-16). Indeed, it was Ryland – not Defendants – that dealt directly with Mr. Virgilio.

Ryland owned the real estate, built the home, and then sold both to Mr. Virgilio. Ryland also took a mortgage from Mr. Virgilio and provided him with financing, title insurance and closing services (Doc. 74, ¶¶ 14-15 and 54). Defendants were neither parties to, nor played a role in, any of these transactions. Defendants and their employees were not, for instance, real estate brokers or agents of Ryland's real estate brokers; they did not provide, or assist in providing, title insurance; and they were not closing agents.

---

[5] Ryland also operated a web site that marketed the Newport subdivision in Vista Lakes (Doc. 111 at 7).

[6] Plaintiffs contend that the Vista Lakes Welcome Center was staffed with employees from Westerra (Doc. 111 at 8). Mr. Virgilio testified, however, that the individuals working in the welcome center were clearly Ryland employees, that all the flags surrounding the welcome center stated "Ryland Homes," and that he understood the welcome center to be a "Ryland welcome center" (Doc. 105-13 at 47-49).

Defendants and Ryland were both fully aware of the PBR and the dangers that it posed[7] at all times material to this case (Doc. 74, ¶ 4). Plaintiffs have never alleged or at any time suggested that Defendants did not disclose the existence of the PBR to Ryland prior to the execution of the Lot Purchase Agreement. On the contrary, Ryland was well aware of the PBR prior to building or selling any of the homes in the Newport subdivision (Doc. 74, ¶ 21; Doc. 118 at 20).

Finally, Plaintiffs have not suffered any sort of bodily injury or property damage (Doc. 105-14 at 34-36). Plaintiffs' damages are comprised solely of the diminution in the economic value of their home, or the difference between the artificially-inflated price that they paid for their home and the reasonable fair-market value that they would have paid for the home, but-for Defendants' failure to disclose the existence of the PBR (Doc. 118 at 8).

## III.

### a.

A party is entitled to summary judgment when it can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Servs., Inc.*, 252 F. Supp. 2d 1347, 1351-52 (M.D. Fla. 2003). In determining

---

[7] Plaintiffs contend in their response that the full extent of the dangers of the PBR, and when Defendants learned of those dangers, are not fully known. For purposes of this Order, however, the Court has assumed that the dangers were immediate and severe and that Defendants were fully aware of same at all material times.

whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255.

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324-25 (internal quotations and citations omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id.* at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value") (citations omitted); *Broadway v. City of Montgomery, Ala.*, 530 F.2d 657, 660 (5th Cir. 1976).

**b.**

With respect to determining a defendant's duty in a negligence action, summary judgment may generally be appropriate inasmuch as the existence of a duty of care is a question of law for the Court. *See*, *e.g.*, *Williams v. Davis*, 974 So. 2d 1052, 1057 n. 2 (Fla. 2007) ("[T]he existence of a duty under our negligence law is a minimum threshold legal requirement that opens the courthouse doors to the moving party, and is ultimately a question of law for the court rather than a jury."); *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502-03 (Fla. 1992).

**c.**

The Court may grant leave for limited discovery when a party is unable to present essential facts in opposition to a motion for summary judgment. FED. R. CIV. P. 56(f); *see also*, *e.g.*, *WSB-TV v. Lee*, 842 F.2d 1266 (11th Cir. 1988). However, "[b]ecause the burden on a party resisting summary judgment is not a heavy one, one must conclusively justify his entitlement to the shelter of Rule 56(f) by presenting specific facts explaining the inability to make a substantive response . . . ." *SEC v. Spence & Green Chem. Co.*, 612 F.2d 896, 901 (5th Cir. 1980) (citations and quotations omitted). More specifically, a party must demonstrate how postponement of a ruling on the motion will enable him to rebut the movant's showing of the absence of a genuine issue of fact. *Id*.

**IV.**

Plaintiffs have not identified a single Florida case recognizing a common law claim for negligence, or "negligent non-disclosure,"[8] that imposes an affirmative duty on a developer, or on an entity that promotes a residential development, to publicly disclose material facts that may negatively affect the economic value of a home that the developer did not build, own or sell. Nor has the Court found such a case. As a threshold matter, then, Plaintiffs appear to concede that Count IX turns upon the Florida Supreme Court's decision in *McCain v. Fla. Power Corp.*, 593 So. 2d 500 (Fla. 1992) (*see* Doc. 118 at 33, citing *McCain*).

---

[8]To be clear, Count IX does not purport to assert a claim for negligent misrepresentation or some other species of fraud. Indeed, Plaintiffs insist that they need not demonstrate reliance and that Count IX consists solely of the four elements traditionally required to establish negligence (i.e., duty, breach, causation and harm) (*see*, *e.g.*, Doc. 118 at 11, 13, 19 and 33-37).

In *McCain*, the court held that Florida may recognize novel negligence claims even in the absence of prior precedent because the law "recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others." 593 So. 2d 500, 503.[9] The harm component of *McCain*'s "zone of foreseeable risk" analysis, however, and Florida's negligence law, in general, has traditionally been limited to those endeavors that create foreseeable risks of bodily injury or property damage. *See*, *e.g.*, *Williams v. Davis*, 974 So. 2d at 1057 n. 3 (cataloging negligence cases involving risks of personal injury and property damage in which a duty has been recognized under *McCain*).

Indeed, well prior to *McCain*, Florida's courts have consistently held that, separate and apart from the economic loss rule,[10] a negligence claim will not lie absent bodily injury or property damage. *See*, *e.g.*, *Monroe v. Sarasota County Sch. Bd.*, 746 So. 2d 530, 531 (Fla. 2d DCA 1999) ("[W]e continue to hold, as a general rule, that *bodily injury or property damage is an essential element* of a cause of action in negligence. We will expand the common law tort of negligence, waiving that essential element only under extraordinary circumstances . . .") (emphasis added).

---

[9]In addition to this "zone of foreseeable risk," other sources of a duty include: (1) legislative enactments or administrative rules; (2) judicial interpretations of such enactments or regulations; (3) other judicial precedent; and (4) a duty arising from the general facts of the case. *McCain*, 593 So. 2d at 503 n. 2 (citing the *Restatement (Second) of Torts* § 285 (1965)); *see also Williams v. Davis*, 974 So. 2d at 1056 (Fla. 2007). Plaintiffs have apparently limited their focus, however, to *McCain*'s "foreseeable zone of the risk" analysis (Doc. 118 at 33).

[10]Because the parties did not address the applicability of the economic loss rule in their papers, the Court mentions that rule here only in passing. The application of the economic loss rule, while likely an additional impediment to Plaintiffs' negligence claim, *see*, *e.g.*, *Casa Clara Condo. Ass'n, Inc. v. Charley Toppino & Sons, Inc.*, 620 So. 2d 1244, 1248 (Fla. 1993) (holding that economic loss rule applies to the purchase of a home), is not necessary to this Order.

With respect to the limited exceptions to that general rule, the Second District Court of Appeal has said:

> It is important to understand that the legal theories used to resolve [cases involving damages that are unconnected to bodily injury or damage to property] stem from separate origins and have evolved separately. There is a tendency for legal thinkers to intentionally or unintentionally intermingle these approaches. This is dangerous . . . .
>
> A careful review of the broad body of law addressing negligence claims for economic injuries suggests at least five separate, but somewhat interrelated, general theoretical approaches. These five approaches are by no means controlling rules of law, but they often disclose the reasons underlying our rules of law . . . . We believe that cases can be better resolved if both lawyers and judges recognize these different approaches and consider the differences in their respective legal heritages when deciding whether a cause of action in negligence exists in a specific context . . . .
>
> Negligence law evolved from the intentional tort of trespass on the case. Because trespass on the case tended to protect a plaintiff only for property damage or injury to person, that is the nature of the protection carried over to negligence law. Thus, the general standards of care traditionally created by negligence law are standards designed to protect person and property from physical injury. Beyond this heritage, there are a number of reasons why good common law judges placed these limitations on traditional negligence . . . . In a free market economy, judges wished to encourage people to exercise their freedom of contract to bargain for private rights and remedies concerning economic issues. The law of negligence effectively creates a social contract of safety. From an economic perspective, traditional common law judges decided that these purely intangible economic risks where matters that should be left as externalities borne by the party that experiences them rather than as costs internalized into the social contract of safety . . . . This social contract of negligence has similarities to statutory law, and thus the court usually creates a new general standard of care in negligence protecting economic interests only when the need to provide the protection is so clear that no legislative guidance is required . . . .

*Monroe*, 746 So. 2d at 534-535 (discussing the foregoing "traditional negligence" approach and identifying the remaining approaches as "professional malpractice," "products liability," "separation of contract," and "negligent misrepresentation") (citations omitted).

With respect to the "negligent misrepresentation" approach,[11] in particular, the *Monroe* Court observed that, in limited circumstances, a party might recover economic losses arising from a misrepresentation that is made in a negligent manner. *Id*. at 537 (citations omitted). These sorts of claims, however, evolved not from the law of negligence, but from the "intentional tort of fraud," which has historically never required bodily injury or property damage. *Id*. (citing, *inter alia*, W. Page Keeton et al., *Prosser and Keeton on Torts* § 6, at 28 (5th ed. 1984)). But negligent misrepresentation claims do require reliance, *see*, *e.g.*, *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So. 2d 334, 337 (Fla. 1997); *Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. 5th DCA 2004), an element that Plaintiffs have eschewed in their Third Amended Complaint and throughout the course of this litigation.[12]

Closely related to negligent misrepresentation claims, however, but omitted from the *Monroe* Court's discussion of negligence claims that do not require bodily injury or property damage, are of course *Johnson* claims.[13] *Johnson* claims are unique in dispensing with not only

---

[11]While the Plaintiffs have not addressed *Monroe* in their papers, it is clear that the instant case does not involve "professional malpractice" or "separation of contract." Furthermore, inasmuch as a home is not product, *see*, *e.g.*, *Easterday v. Masiello*, 518 So. 2d 260, 261 (Fla. 1988) ("[I]t has long been recognized that the doctrine of strict products liability does not apply to structural improvements to real estate") (citations omitted); *Strathmore Riverside Villas Condo. Ass'n, Inc. v. Paver Dev. Corp.*, 369 So. 2d 971 (Fla. 2d DCA 1979) (rejecting overture to depart from existing rules relating to real estate transactions by substituting principles of strict liability in tort), it is also clear that this case does not involve products (or strict) liability.

[12]*See supra* note 8.

[13]It is not entirely clear whether *Johnson* claims are derived from the law of fraud or negligence (or even contract). *Compare*, *e.g.*, *Meyer v. Thompson*, 861 So. 2d 1256, 1258 (Fla. 4th DCA 2003) ("[T]he 'duty' to disclose established in *Johnson* is derived from the law of negligence") (citing *Billian v. Mobil Corp.*, 710 So. 2d 984 (Fla. 4th DCA 1998)) *with Woodson v. Martin*, 663 So. 2d 1327, 1333-34 (Fla. 2d DCA 1995) (Lazzara, J., dissenting) (characterizing *Johnson* claims as

-12-

the requirement of bodily injury or property damage, but also reliance. Furthermore, *Johnson* claims would seem to come clearly within the ambit of *McCain's* "zone of foreseeable risk." However, as this Court has addressed at length in its prior orders, the duty proscribed in *Johnson* applies only to sellers, those in privity with the buyer, individuals acting as agents on behalf of the seller (e.g., a real estate broker or closing agent), or those who have a fiduciary or some other special relationship with the buyer (Docs. 70 and 93); *see*, *e.g.*, *Kovach v. McLellan*, 564 So. 2d 274, 277 (Fla. 5th DCA 1990) (noting that *Johnson* requires privity between seller and buyer or a longstanding, special or fiduciary relationship, before the duty to disclose will be imposed); *Daniel v. Coastal Bonded Title Co.*, 539 So. 2d 567, 568-69 (Fla. 5th DCA 1989) (not discussing *Johnson*, but holding that title company, which was also closing agent, had duty to disclose encroachments that materially affected value of property); *Rayner v. Wise Realty Co.*, 504 So. 2d 1361 (Fla. 1st DCA 1987) (holding that seller's real estate broker was subject to *Johnson*'s duty to disclose); *see also* Robert M. Morgan, *The Expansion of the Common Law Duty of Disclosure in Real Estate Transactions: It's Not Just For Sellers Anymore*, 68 FLA. B. J. 28 (Feb. 1994) (discussing, *inter alia*, *Kovach* and noting that "to impose liability against a vendor under Johnson [sic], there must be privity between the vendor and vendee").[14]

---

sounding in fraud); *but see Williams v. Peak Resorts Int'l, Inc.*, 676 So. 2d 513, 519-20 (Fla. 5th DCA 1996) (suggesting that *Johnson* provides a contract remedy). The Court has simply assumed, without deciding, that *Johnson* claims sound in negligence.

[14]With the exception of cases decided in just two other jurisdictions, Plaintiffs have failed to adduce any support whatsoever for the proposition that Florida has expanded *Johnson* to include more than just those who own, build, or sell a home (or act as their agents). In fact, Plaintiffs have been less than forthright to the Court in their citations to Florida law. In their first memorandum of law addressing this issue, for instance, Plaintiffs represented to the Court that "[T]he duty established in *Johnson* has been expanded to apply to more than just sellers of residential property" (Doc. 66 at 9).

Even assuming, then, that Plaintiffs could borrow the duty in *Johnson* for purposes of stating a negligence claim (which in all materials respects would be completely redundant of Plaintiffs' *Johnson* claim against Defendants), Defendants would not be subject to such a duty.

---

As direct support for that proposition of law, Plaintiffs' string cite first included the case of *Solorzano v. First Union Mortgage Corp.*, 896 So. 2d 847 (Fla. 4th DCA 2005), which Plaintiffs characterized as "holding [a] mortgage corporation liable under *Johnson* for failing to disclose material housing code violations" (Doc. 66 at 10). In point of fact, and as the Court noted in a prior Order (Doc. 70 at 8 n. 4), First Union Mortgage "*sold* Solorzano residential real property," and its liability was predicated on its status as a seller of the property – not its status as a mortgage company. *Id*. at 849 (emphasis added).

The next case in Plaintiffs' string cite was *U.S. Home Corp. v. Metro. Prop. & Liab. Ins. Co.*, 516 So. 2d 3 (Fla. 2d DCA 1987), from which Plaintiffs quoted only the following portion of the court's opinion: "The record of this case reflects facts and circumstances from which the trier of fact could conclude that a *developer* possessing the knowledge and experience of U.S. Home knew that one or more material defects existed in this home prior to closing and that such defects were concealed from the buyer by nondisclosure" (Doc. 66 at 10) (emphasis added). In reality, however, the Second District Court of Appeal clearly held that a builder-seller, which had not developed the home site or lot, but which built and sold a home pursuant to a contract with the home buyer, had a duty under *Johnson* to disclose a subsoil defect to the home buyer prior to closing. 516 So. 2d at 3. Accordingly, *U.S. Home Corp.* provides no support whatsoever for the proposition that the "duty established in *Johnson* has been expanded to apply to more than just sellers." Plaintiffs nevertheless continued to rely on that case in their subsequent memorandum to the Court for the same legal proposition (*see* Doc. 87 at 11).

Finally, in their latest motion for class certification, Plaintiffs cite *Billian v. Mobil Corp.*, 710 So. 2d 984 (Fla. 4th DCA 1998) and provide only the following parenthetical quotation: "[t]he heart of this case involves the *developer's* purported failure to disclose to the buyers certain facts and defects concerning a condominium unit" (Doc. 118 at 19) (emphasis added). *Billian*, *inter alia*, simply reversed the trial court for instructing the jury that *Johnson* required an intentional non-disclosure on the part of seller. *Id*. at 989. There is no mention however, in the court's opinion that the developer was not the seller (at most, the opinion notes that the plaintiffs were the "purchasers" and that they had sued a number of "related entities" for non-disclosure and *rescission* – an equitable remedy that strongly suggests there was privity between the plaintiffs and developer). *Id*. at 986.

Defendants never owned, sold, or built a single house in Plaintiffs' subdivision.[15] Plaintiffs never dealt or met with Defendants at any point in the course of entering into their contract with Ryland, and Defendants did not act as Ryland's agent, or as fiduciaries of Plaintiffs, at any time prior to closing. While it was foreseeable that Defendants' general marketing campaign could lead some members of the public to consider purchasing a home in Vista Lakes, that marketing had nothing to do with any particular home in Vista Lakes and, at most, simply put Plaintiffs in face-to-face discussions with Ryland. Consequently, Defendants would have to be subject to a duty of disclosure that is broader than the duty imposed by *Johnson* in order for Plaintiffs to "open the courthouse doors" on their negligence claim.

In light of preceding framework, the Court holds that Defendants had no duty, as a matter of Florida negligence law, to disclose material facts that may have negatively affected the value of Plaintiffs' home. Such a duty has never been recognized in the law of negligence by Florida's courts and clearly fails *McCain*'s "zone of foreseeable risk" analysis inasmuch as the harm occasioned by Defendants' non-disclosure did not result in any bodily injury or property damage. While *Monroe* suggests that there is a limited class of negligence claims that do not require bodily harm or property damage, this Court will not impose a new general standard of care that is broader than the duty in *Johnson*, to protect only economic interests which have long been guarded by the

---

[15]The application of *Johnson* to Defendants is problematic on other grounds as well. *See*, *e.g.*, *Azam v. M/I Schottenstein Homes, Inc.*, 761 So. 2d 1195, 1197 (Fla. 4th DCA 2000) (expressly declining to extend *Johnson* to facts "concerning an off-property site that [did] not affect the *physical* condition of the properties sold") (emphasis added), *aff'd on other grounds*, 813 So. 2d 91 (Fla. 2002). Although the location of the PBR (and, more particularly, the area within the PBR on which munitions and ordinance were actually used) relative to Plaintiffs' home is not entirely clear, there has been no physical damage to Plaintiffs' home or any change in its physical condition.

-15-

law of contract and fraud.  The risk that Plaintiffs might sustain intangible economic damages as a result of Defendants' non-disclosure is simply not the type of harm which the Defendants were required, as a matter of Florida negligence law, to guard against.  Accordingly, Defendants are entitled to a judgment as a matter of law on Count IX.

**V.**

For the foregoing reasons, it is **ORDERED** that Defendants' Motion for Summary Judgment (Doc. 121) is **GRANTED**.

The Clerk of the Court is directed to enter judgment in favor of Defendants, Terrabrook Vista Lakes, LP, Terrabrook Vista Lakes GP, LLC, Newland Communities, LLC and Westerra Management, LLC, and against Plaintiffs, Luis and Norma Virgilio, on Count IX of Plaintiffs' Third Amended Complaint (Doc. 74).

Finally, the Clerk of the Court is directed to terminate Terrabrook Vista Lakes, LP, Terrabrook Vista Lakes GP, LLC, Newland Communities, LLC and Westerra Management, LLC as parties to this case.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on February 8, 2010.

Copies furnished to:

Counsel of Record
Unrepresented Party

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE